**WALBROOK INSURANCE COMPANY LIMITED, Kraft Insurance Company Limited, El Paso Insurance Company Limited, Louisville Insurance Company Limited, Ludgate Insurance Company Limited, Compagnie Europeenne D'Assurances Industrielles S.A., First State Insurance Company, Virginia Surety Company, Inc. and Branch, Plaintiffs,**

v.

**GOSHGARIAN & GOSHGARIAN, a California law partnership, and Haig Goshgarian, Defendants.**

**GOSHGARIAN & GOSHGARIAN, a California law partnership, and Haig Goshgarian, Counter-claimants,**

v.

**WALLBROOK INSURANCE COMPANY LIMITED, et al., Counter-defendants.**

No. CV 88–7751 WJR (Bx).

United States District Court, C.D. California.

Dec. 4, 1989.

---

Musick, Peeler & Garrett by Lynn Combs, Los Angeles, Cal., for plaintiffs.

Caiafa Professional Law Corp. by R. Joseph DeBriyn and Douglas Caiafa, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

REA, District Judge.

This matter comes before the Court on the motion of defendant for summary judgment or, in the alternative, for summary adjudication. Having considered the papers filed in support thereof and in opposition thereto and having heard oral argument, it is HEREBY ORDERED that defendants' motion is DENIED, but without prejudice on the duty to defend issue. Furthermore, this Court ORDERS and ADJUDGES that plaintiffs made an adequate reservation of their right to reimbursement of the litigation monies furnished to defendants. The Court therefore GRANTS plaintiffs, the non-moving party, summary judgment as to part of their Fourth cause of action.

## I. FACTUAL BACKGROUND

This is an action for declaratory relief and indemnity brought by plaintiffs Wallbrook Insurance Co. Ltd., et al. (the "Insurers") against defendants Haig Goshgarian ("Goshgarian") and the law partnership of Goshgarian & Goshgarian ("Partnership"). Defendants purchased an errors and omissions insurance policy from plaintiffs. Goshgarian subsequently became a defendant in the underlying action of *Erik Mezger & Co. v. Safe-T-Jack, Inc. et al.* ("*Mezger*"). Upon learning of the *Mezger* lawsuit, Goshgarian asked the Insurers to provide for his defense. The Insurers subsequently undertook the defense pursuant to a unilateral reservation of rights. Goshgarian chose to select independent defense counsel to represent him in the underlying action. The Insurers subsequently advanced Goshgarian the policy limit of $500,000 for payment of defense costs. Judgment was ultimately rendered for plaintiff in the *Mezger* suit in the amount of approximately $600,000 plus attorney's fees. Defendant partnership was not a party to that suit.

Plaintiff Insurers then brought a complaint, now the First Amended Complaint, for declaratory relief and indemnity, seeking both a declaration as to their rights and liabilities under the policy and reimbursement of the monies already paid to defend Goshgarian in the *Mezger* suit. The Fourth cause of action for reimbursement of the defense monies paid remains intact against both Goshgarian and the Partnership, while the three causes of action for declarations as to the rights and liabilities under the policy remain intact against Goshgarian only. In conjunction with the submission of their answer to the First Amended Complaint, defendants brought a counterclaim for damages against plaintiffs, alleging ten separate causes of action. On August 28, 1989, this Court dismissed three of these counter-claims, one with prejudice.

Defendants now bring this motion for summary judgment or, in the alternative, for specification of issues without substantial controversy (in effect a summary adjudication of issues under Fed.R.Civ.Pro. 56(d)).

## II. DISCUSSION

Defendants have asked this Court to adjudge that: (1) the Insurers had a duty to defend the Insured in the underlying action; and (2) the Insurers are not entitled to reimbursement from the Insureds of the attorneys' fees paid in defense of the underlying action as the Insurers failed to make an adequate reservation of their right to reimbursement. Defendants also advance a statement of factual issues, asking this Court to find them to be uncontroverted. Some of these issues are disputed by plaintiffs, while others are undisputed.

### A. *Duty to Defend*

Defendants first argue that plaintiffs had a duty to defend the underlying action, in which case plaintiffs would not be entitled to reimbursement of the defense funds advanced to defendants. Defendants, who have the burden of proof on this issue, have come forward with evidence allegedly supporting their position.

Some of the issues advanced by defendants are specifically undisputed by plaintiffs. It is undisputed that defendants are "Insureds" under the policy; that a claim was made by Mezger (the plaintiff in the underlying action) against the Insured in June, 1987; and that on September 9, 1987, the Insured requested the Insurers to defend the underlying action.

In California, "[t]he duty to defend is to be assessed from the outset of the litigation, and the insurer must defend its insured if there is a potential of liability under the policy." *Beverly Hills v. Chicago Ins. Co.*, 668 F.Supp 1402, 1405 (C.D. Cal.1987). Therefore, it is said that "[a]n insurer's duty to defend is broader than its duty to indemnify its insured." *Id.* "The initial step in analyzing the duty to defend in any particular action is to focus upon the language and purpose of the applicable insurance policy. The duty to defend is obviously limited to the nature and kind of risks covered by the policy." *Id.* The second step is to analyze all other facts known to the insurer at the outset of the litigation.

"[T]he burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage." *Id.* at 1406.

■ It is therefore the defendants' burden here to show that the underlying action could potentially render Goshgarian liable for acts which are covered by the policy. To prevail on summary judgment, defendants must show that the facts known to the plaintiffs at the outset of the underlying action constitute an occurrence which could potentially come under the coverage of the policy. Whether the facts set forth by the parties are sufficient to show potential coverage is a matter of law. California courts have stated that "[t]he responsibility of interpreting the insurance contract rests with the judge as a matter of law...." *Miller v. Elite Ins. Co.,* 100 Cal.App.3d 739, 757, 161 Cal.Rptr. 322 (1980).

Generally, "where there is doubt as to whether the duty to defend exists, the doubt must be resolved in favor of the insured...." *CNA Casualty v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 607, 222 Cal.Rptr. 276 (1987). In a summary judgment motion, this principal must be balanced with the general rule resolving reasonable inferences in favor of the non-moving party. In cases in which there is no doubt as to coverage, the court does not become embroiled in such a balancing act. The Ninth Circuit has held that when the terms and extent of coverage of the policy are clear and unambiguous, rendering the potential for liability "tenuous and far-fetched", an insurer will not be compelled to defend. *Lassen Canyon Nursery v. Royal Ins. Co.,* 720 F.2d 1016, 1018 (9th Cir.1983).

It has also been stated that coverage is limited to the types of relationships reasonably contemplated by the coverage provisions of the policy. *Blumberg v. Guarantee Ins. Co.,* 192 Cal.App.3d 1286, 1293, 238 Cal.Rptr. 36 (1987). And, as a further aid to interpretation, "[a]n insurance policy, like any other contract, must be construed in its entirety, with each clause lending meaning to the other." *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 916–17, 226 Cal.Rptr. 558, 718 P.2d 920 (1986) (citation omitted).

The Complaint in the underlying action alleges that the acts forming the basis of the Safe–T–Jack suit occurred while Goshgarian served as a director and secretary of defendant Safe–T–Jack. (defendants' exhibit 2 at paragraph 17). This contention is not disputed by plaintiffs. The Complaint does not allege the precise services rendered by Goshgarian to Safe–T–Jack, rather, Goshgarian is generally included in most of plaintiff Mezger's causes of action.

The initial evidence to be examined by this Court is the policy itself. The policy (defendants' exhibit 1) indemnifies the insureds for all expenses and sums legally incurred as the result of professional services furnished or which should have been furnished by the insureds. (*Id.* at 3). Professional services are generally defined as any services furnished by the insured in the capacity as lawyer or in any similar fiduciary capacity. (*Id.* at 7).

However, it is clear from the face of the policy that defendants did not purchase directors and officers liability insurance. The purchase of directors liability would have included adding definition K–3 to the definition of professional services in the policy. Definition K–3 states that professional services include services rendered:

[B]y the Insured in the course of the Insured's performance of activities (other than those described in DEFINITIONS K–1 and K–2) as an official, officer, director, partner, agent or employee of any business enterprise (other than that of the law practice of the firm), charitable organization or any public body, provided that such services are undertaken with the prior written knowledge and consent of the Named Insured.

. . . . .

In the event that the Named Insured does not, within the application attached hereto, elect to purchase the coverage afforded by DEFINITION K–3, the Company shall not pay on behalf of any Insured any damages or Claim expenses as a result of any Claim arising from Professional Services which were rendered

or which should have been rendered as described in DEFINITION K-3 above. (defendants' exhibit 1 at 7). These above terms indicate that defendant Goshgarian, as an Insured under the policy, was not insured for services rendered while serving as a director or employee of Safe-T-Jack. However, Goshgarian would still be covered for services furnished as a lawyer under DEFINITION K-2, if the Partnership (the First Named Insured)[1] had purchased the protection of Definition K-2. Definition K-3 by its language does not exclude coverage for activities described in K-2.

Definition K-2 provides that professional services include services furnished:

> [B]y the owners, partners, officers or directors of the First Named Insured ... in their capacity as a lawyer, ... or in any similar capacity outside the conduct of the First Named Insured's business, provided that such services are undertaken with the prior written knowledge and consent of the First Named Insured.

(defendants' exhibit 1 at 7).

■ It is not clear from the face of the policy whether defendants purchased the coverage of Definition K-2. Absent evidence that such protection was not purchased, the Court will resolve this ambiguity in favor of the Insured and assume this protection was purchased. However, defendants have not presented evidence that Haig Goshgarian had the Partnership's prior written knowledge and consent to furnish legal services to Safe-T-Jack. The absence of this evidence alone precludes granting summary judgment to defendants on the duty to defend issue.

■ This Court therefore need not address the other arguments before it on this issue, however it must be noted that defendants have failed to present adequate evidence on other factual issues as well. Defendants must show that there was a possibility at the outset of litigation that Haig Goshgarian could be found liable for his rendition of legal services to Safe-T-Jack, not merely for other services furnished as a director. The complaint itself names Haig Goshgarian as a Director and Secretary of Safe-T-Jack, but does not allege that Goshgarian rendered legal services to Safe-T-Jack. Defendant would have to present evidence that other facts available to plaintiffs at the outset of the underlying litigation rendered Goshgarian potentially liable for furnishing legal services.

■ Also, defendants will need to prove that the potential liability in the underlying suit arises from services rendered while the policy was in effect. Plaintiffs have argued that the acts which form the basis of the underlying suit occurred prior to the inception of the policy. While the policy is a "claims made policy", the policy states that "prior acts are excluded." (*Id.* at 2). Therefore, if the acts of the underlying suit occurred prior to the inception of this policy then plaintiffs would not have a duty to defend the underlying suit.

The evidence necessary to grant defendants summary judgment of the duty to defend issue is not now before the Court. Therefore, the Court denies defendants' motion as to the first issue.

### B. *Adequate Reservation of Rights*

Defendants argue that, even if plaintiffs did not have a duty to defend the underlying action, the plaintiffs are not entitled to reimbursement of the defense fees as a matter of law, as they failed to make an adequate reservation of rights. Defendants would have the Court believe that an adequate reservation cannot be made if the insured expressly refuses to consent to the reservation, regardless of whether the insured then accepts defense funds from the insurer.

It is undisputed that, in agreeing to defend, the Insurers reserved their rights regarding coverage and attorneys' fees. Three other facts advanced by defendants are disputed by plaintiffs, including whether the insurers agreed to defend the underlying action; whether the insured specifically objected to the reservation; and

---

**1.** "First Named Insured" is defined in the policy at DEFINITION D as the firm listed in the Declaration, in this case Goshgarian & Goshgarian (the "partnership").

whether there was an agreement or acquiescence to the reservation.

California courts now hold that there are two possible theories for recovery of litigation costs by an insurer. The theory applicable here "is an agreement or understanding between the parties that the insured would reimburse the insurer for litigation costs should the coverage issues be adjudicated in the insurer's favor." *Insurance Co. of the West v. Haralambos Beverage Co.*, 195 Cal.App.3d 1308, 1322, 241 Cal.Rptr. 427 (1987). The *Haralambos* court found no evidence in the record of an agreement or understanding that the insured would reimburse the insurer in the event there was no duty to defend, despite the insurer's oral reservation of rights and a letter to the insured.

The only precedent for this holding cited by the *Haralambos* court is *St. Paul Mercury Ins. Co. v. Ralee Engineering Co.*, 804 F.2d 520, 522 (9th Cir.1986). In *St. Paul* the record also did not reflect an understanding between the parties that the insured would reimburse the insurer. In the *St. Paul* case, the reservation of rights letter states only that the insurer might "refuse to defend you *further* at any future time." *Id.* (emphasis added). This statement was found to be inadequate to reserve rights to reimbursement of past defense costs.

The third principal case discussing reimbursement under California law is *Omaha Indem. Ins. Co. v. Cardon Oil Co.*, 687 F.Supp 502, 504–05 (N.D.Cal.1988). *Omaha* is similar to the present case before the Court as the *Omaha* insurer expressly reserved its right to seek reimbursement of all defense costs, whereas "[i]n both *Haralambos* and *St. Paul*, ... the reservation of rights letters sent by the insurers made no reference to reimbursement of [the] litigation expenses [at stake in the action]." *Id.* The *Omaha* court found that, as a

result of the letter, "it is undisputed that [the insureds] were aware of [the insurers] intention to seek reimbursement of legal expenditures." *Id.* at 504. Therefore the court held that the reservation was adequate, and ordered reimbursement to the insurer of the litigation expenses previously paid to defend the insured in the underlying action.[2]

There is no California case directly on point as to the facts found in the present case. The record in the present case reflects that, pursuant to a letter dated March 11, 1988, plaintiffs (through the Self Insurers Service) "undertook" a defense of the underlying action under a reservation of rights. The letter specifically states that the policy may not provide coverage for the underlying suit, that the insured had elected not to purchase outside directors and officers liability coverage, and sets forth the definitions of "professional services" as found in the policy. The letter concludes that plaintiffs specifically reserve the right to recover all sums paid on behalf of Goshgarian for defense, settlement, or satisfaction of the judgment. (defendants' exhibit 4).

Defendants responded with letters dated March 16 and 17, acknowledging the defense but objecting to the reservation of rights and refusing to consent or acknowledge the validity of such rights. (defendants' exhibits 5 and 6). Despite these objections, however, defendants accepted payments from plaintiffs totalling $500,000 to defendants' independent counsel in the underlying suit. Included in this total are checks from plaintiffs dated September 13, 1988, and December 6, 1988. (plaintiffs' exhibits M and N).

As stated, neither Federal nor California courts have addressed the issue of what effect, under California law, the insured's refusal to consent to an insurer's express reservation of the right to reimbursement

---

**2.** Defendants' cited case of *State Farm Fire & Casualty v. Neumann*, 698 F.Supp 195 (N.D.Cal. 1988) is unpersuasive. The *Neumann* court held that even though there was no duty to defend, "plaintiff is not entitled to reimbursement of attorney's fees expended on behalf of the Neumanns. Plaintiff has not shown any

agreement with the Neumanns for such reimbursement." *Id.* at 196. The only authority cited by the *Neumann* court is *St. Paul*, which has already been distinguished from the present case. As we have no idea what evidence was before the *Neumann* court, we cannot say that the same lack of evidence is before this Court.

of defense fees has upon the right of reimbursement, especially when such fees are accepted by the insured for his defense. There is a split of authority in other jurisdictions on the effect to be given such refusals of consent in general. *See* 7C J. Appleman, *Insurance Law & Practice* Section 4694 (W. Berdal ed. 1979).

Defendants cite *Val's Painting v. Allstate Ins. Co.*, 53 Cal.App.3d 576, 586, 126 Cal.Rptr. 267 (1975), *cited in Omaha, supra*, at 505, as stating that if the insured expressly refuses to consent to a reservation of rights, a unilateral reservation is ineffective. Defendants have misread the *Val's* case. The language cited by defendants is taken from the following discussion by the *Val's* court (defendants' cited language is emphasized):

> The authorities are split on the circumstances in which a unilateral reservation of rights will preserve the rights of the insurer. Thus, it has been said that courts are liberal in implying a reservation of rights and deeming the insured's acceptance of the defense to be acquiescence. On the other hand, it has been said that *if the insured expressly refuses to consent to a reservation of rights, a unilateral reservation is ineffective; the insurer must make an election whether to defend or refuse to defend.*
>
> In California, however, the theory that by defending the suit an insurer "waives" its right to claim noncoverage rests upon the doctrine of estoppel. There must be a showing that the insurer either intentionally relinquished a known right, or acted in such manner as to cause the insured reasonably to believe the insurer had relinquished such right, and that the insured relied upon such conduct to his detriment. (citations omitted).

*Val's, supra*, at 586–87, 126 Cal.Rptr. 267. Neither *Omaha* nor *Val's* held that a unilateral reservation of rights is ineffective. Rather, the courts were surveying the state of the law in other jurisdictions, finding that a few other jurisdictions and commentators have declared that a unilateral reservation is ineffective. The second paragraph of the *Val's* quote above would indicate that in California the law is different than the statement quoted by defendants.

It is true that the *Val's* court was specifically concerned with the insurer's reservation of the right to claim noncoverage despite furnishing a defense to the insured. However, the *Omaha* court applied the *Val's* discussion of adequate reservations to the right of reimbursement issue as well. *See Omaha, supra*, at 505. The application of the above language to the right of reimbursement would appear to be consistent with the cited cases. As *Val's* held above, in order to find an ineffective reservation, there must be a showing that the insurer either intentionally relinquished a known right, or acted in such manner as to cause the insured reasonably to believe the insurer had relinquished such right, and that the insured relied upon such conduct to his detriment. In both *Haralambos* and *St. Paul*, in which courts found the reservation of rights letters sent by the insurers to be inadequate, the letters make no reference to reimbursement of the litigation expenses at stake in the subsequent litigation. Therefore, the insureds in those cases could have reasonably believed that the insurers had relinquished the right to such reimbursement. In *Omaha*, the court found that the insured was aware of the insurer's intention to seek reimbursement, and thus the insured could not have reasonably believed that the insurers had relinquished this right.

Finally, a survey of the limited number of cases on refusals to consent to reservations of rights from other jurisdictions shows that the modern trend is to find a unilateral reservation to be effective without the insured's consent. Among these cases is *Crawford v. Ranger Ins. Co.*, 653 F.2d 1248 (9th Cir.1981), in which the Ninth Circuit held that under Hawaiian law an insurer did not waive its right to disclaim coverage when it provided a defense without first securing an insured's consent to a reservation of rights letter. The *Crawford* court further held that an older Hawaiian case, which found that an insurer was required to obtain the insured's unqualified

consent, was limited to its facts. The most recent case found is *Draft Systems, Inc. v. Alspach*, 756 F.2d 293, 296 (3d. Cir.1985), in which it was held that under Pennsylvania law, reservation of rights letters do not require the assent of the insured to be valid and effective.

■ In the present case there can be no doubt that defendants knew that plaintiffs intended to seek reimbursement if it was found that there was no duty to defend. As in *Omaha*, this awareness can be shown from the fact of the explicit reservation letters sent to defendants explaining the reservation prior to the payment of defense costs, and the further notice of reservation accompanying each defense cost payment. While defendants did specifically object to this reservation, they also accepted $500,000 in defense costs from plaintiffs. This would be inconsistent with their objections, as they are refusing to accept the agreement yet retaining the fruits of it. There is adequate evidence showing an "understanding" that plaintiffs would seek reimbursement. Furthermore, this Court holds that acceptance of the monies constitutes an implied agreement to the reservation.[3]

■ As a matter of law, plaintiffs made an adequate reservation of rights. There are no further facts which defendants could raise to counter this conclusion. This Court is therefore denying defendant's motion for summary judgment on this issue, and granting summary judgment to plaintiffs, the non-moving party.

The Ninth Circuit recognized the ability to grant summary judgment to the non-moving party in *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir.1982).

[T]he overwhelming weight of authority supports the conclusion that if one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may *sua sponte* grant summary judgment to the non-moving party.

*Id.* In *Cool Fuel*, the Ninth Circuit upheld such a grant of summary judgment to a non-movant. Of course, it is mandatory that the victim of the judgment be given an opportunity to dispute the material facts of the claim. In this case, no set of facts could allow defendants to prevail on the reservation of rights issue, and summary judgment to the plaintiffs is appropriate.

## III. CONCLUSION

In accordance with the foregoing, this Court hereby ORDERS that defendants' motion for summary judgement is DENIED, but without prejudice as to the duty to defend issue. This Court further ORDERS and ADJUDGES that the defendants accepted the defense monies paid by the Insurers with the understanding and implied agreement that they were being paid under a reservation of rights. Therefore, the Insurers adequately reserved their right to seek reimbursement of the defense costs and are entitled to reimbursement from the Insureds of the attorneys' fees paid in defense of the *Mezger* action if it is established that they did not have a duty to defend the Insureds in said underlying action.

In addition, this Court summarily adjudicates the following facts to assist in narrowing the issues of the case:

1. Haig Goshgarian and Goshgarian & Goshgarian are "Insureds" under the policy of insurance issued herein by plaintiffs Wallbrook Insurance Company, Ltd., et al. (the "Insurers").

2. Goshgarian & Goshgarian is the "First Named Insured" under the policy.

3. A claim was made by Mezger against the insured in June, 1987.

4. On September 9, 1987, the Insured requested the Insurers to defend the *Mezger* action.

---

3. The Court is not ruling that the insureds could not have forced the insurers to make an election of whether to defend or refuse to defend. Perhaps if defendants had specifically asked plaintiffs to make such an election prior to accepting any of the defense funds an election would be forced. Such a factual situation is not now before the Court.

5. On March 11, 1988, the Insurers undertook a defense of the *Mezger* action under a reservation of rights.

6. In agreeing to defend, the Insurers reserved their rights regarding coverage and reimbursement of attorneys' fees.

7. The Insured (Goshgarian) and his counsel specifically objected to and refused to consent to the Insurers' reservation of rights.

8. The Insureds accepted $500,000 in defense costs from the Insurers.