[No. S083934. May 10, 2001.]

BLUE RIDGE INSURANCE COMPANY, Plaintiff and Appellant, v. BRIGITTE JACOBSEN et al., Defendants and Appellants.

## Counsel

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Wendy S. Lloyd and Paul J. O'Rourke for Plaintiff and Appellant.

Horvitz & Levy, Peter Abrahams and David S. Ettinger for American Insurance Association, American International Group, Inc., National Association of Independent Insurers and Truck Insurance Exchange as Amici Curiae on behalf of Plaintiff and Appellant.

Wasserman, Comden & Casselman and Glen A. Brown, Jr., for Defendants and Appellants.

## Opinion

**BROWN, J.**—In response to the request of the Ninth Circuit Court of Appeals, we answer the following certified question: "Whether an insurer defending a personal injury suit under a reservation of rights may recover settlement payments made over the objection of the insured when it is later determined that the underlying claims are not covered under the policy." (*Blue Ridge Ins. Co. v. Jacobsen* (9th Cir. 1999) 197 F.3d 1008, 1009 (*Blue Ridge*); Cal. Rules of Court, rule 29.5.) Here, at the time it accepted defense of the insureds, the insurer reserved its right to dispute coverage for any settlement contribution made to the injured third party. However, when a reasonable settlement offer was subsequently tendered, the insureds refused to agree the insurer could settle if the insureds would be liable for reimbursing the insurer for any noncovered claims. They also refused to either assume their own defense, or agree the settlement offer was unreasonable, and hence could not be the basis for a later bad faith action based on the

failure to settle. Under such circumstances, we conclude an insurer may be reimbursed for a reasonable settlement payment made over the objection of its insureds.

## I. Factual and Procedural Background

The following statement of undisputed facts is derived in part from the Ninth Circuit's opinion. (*Blue Ridge, supra,* 197 F.3d at pp. 1009-1011.) During the 1970's until late 1989, defendants and insureds Brigitte and John Jacobsen operated a dog kennel business in Sun Valley, California. They specialized in importing champion German shepherd and Rottweiler dogs from Germany and reselling them in the United States. Robert and E'dee Bolognesi, plaintiffs in the underlying action, also operated a dog kennel business. The Bolognesis had purchased several dogs from Brigitte Jacobsen, some directly from her kennel, and some specifically imported from Germany by her at their request.

Although Brigitte Jacobsen closed her kennel business in 1989, in 1991 she assisted the Bolognesis in purchasing a German Schutzhund III male Rottweiler dog—Benno Vom Gelderland. Approximately five months later, Benno severely mauled E'dee Bolognesi. E'dee was 29, and the mother of a young child. The Bolognesis sued the Jacobsens, alleging theories of product liability, negligence, and fraud. The Jacobsens tendered the defense to their homeowner's insurer, Blue Ridge Insurance Company (Blue Ridge).

Blue Ridge disputed coverage on the grounds that the Bolognesis' claims fell within either the "business pursuits" or the "professional services" exclusion to the homeowner's policy. Blue Ridge agreed to defend the Jacobsens subject to a reservation of rights which provided: "[B]ecause it appears likely that your liability in this action, if any, will not be covered under the policy, Blue Ridge Insurance Company hereby reserves its rights to . . . (b) Refuse to indemnify you with respect to any judgment or settlement; (c) Initiate a separate action to determine our duty to defend or indemni[f]y you; (d) Obtain recovery from you of any costs or expenses, including fees for legal services . . . ; (e) Request your participation in any settlement of the above-titled action with the understanding that any contribution made by us is subject to the reservation of our right to dispute coverage, unless we expressly waive in writing all such reservations." Blue Ridge provided the Jacobsens with independent counsel for defense in the underlying action. (See Civ. Code, § 2860, subd. (a).)

Shortly thereafter, Blue Ridge brought a declaratory judgment action seeking adjudication of the coverage issue. In response to the Jacobsens'

motion, the district court stayed the action pending resolution of the under-lying state court proceeding. It was this federal declaratory relief action that ultimately led to the question certified to this court by the Ninth Circuit Court of Appeals.

On May 23, 1996, the Bolognesis made a policy limits settlement demand of $300,000 to the Jacobsens. The "[p]laintiff makes no secret of the purpose of this policy limits demand: it is to 'open up' or 'delimit' the policy should Blue Ridge Insurance fail to accept this offer and plaintiff later obtain an eight figure judgment. Although plaintiffs would actively pursue the assets of the Jacobsens after obtaining such a judgment, if . . . the judgment was not satisfied, plaintiffs would also consider accepting from the Jacobsens an assignment of rights against their insurance carriers for any possible bad faith and extracontractual liability which might have arisen as a result of Blue Ridge Insurance Company's failure to settle this case within policy limits when presented with the opportunity." The letter further stated E'dee Bolognesi's medical bills to date totaled more than $200,000. She suffered 17 fractures to her left arm, and both arms were torn apart with severe tissue loss. She required a venous transplantation from her leg to her arm, together with muscle and skin grafting, leaving her with terrible scarring. She had undergone 17 separate surgeries. The attack "was all the more devastating because it struck E'dee Bolognesi—a beautiful young woman of 29—just as she was about to enter the prime of life." The offer was to expire on June 7, 1996. This date was subsequently extended to June 12, 1996.

A series of letters between Blue Ridge and counsel for the Jacobsens ensued. On June 4, 1996, Blue Ridge informed the Jacobsens that it had determined the settlement offer was reasonable. It proposed to accept the demand under a reservation of its right to seek recovery of the settlement amount from the Jacobsens. It also gave the Jacobsens the option to assume their own defense if they found the settlement offer unreasonable. If Blue Ridge did not hear from the Jacobsens by June 10, 1996, it would assume they had no objection and would "proceed to accept the settlement demand under a full and complete reservation of rights including the right to seek reimbursement from [the Jacobsens] for the amounts so paid."

On June 10, 1996, the Jacobsens responded. "The simple answer to your letter is no." The Jacobsens stated they contested liability and that there was substantial evidence E'dee Bolognesi had voluntarily assumed the risk of her injury. "Under the terms of your client's policy, it has the ability to settle claims without the consent of the Jacobsens. Should your client care to exercise its rights under the policy to settle the claim, then it may do so, pay the settlement and close its books on this matter. However, the Jacobsens

will not consent to settlement of this matter on the terms you suggest. [¶] Moreover, *to the extent that your client views the settlement demand as 'reasonable,' then it has an obligation to accept that settlement demand or face the prospect of having 'blown' its policy limits.* To the extent that your client views the settlement demand as unreasonable, then there is further evidence that your client's offer to the Jacobsens has been made in bad faith. The fact that the Jacobsens would not consent to your settlement will not be a defense in an action for a wrongful refusal to settle." Counsel also noted the expiration date of the settlement offer had been extended to June 19, 1996.

On June 14, 1996, Blue Ridge responded, reiterating its proposal to accept the settlement under a reservation of rights, but first offering the Jacobsens the opportunity to assume their own defense. In response to the Jacobsens' " 'blown' " policy limits comment, Blue Ridge said the comment "appears to constitute a statement of your clients' position to the effect that since Blue Ridge has determined that the settlement demand is reasonable, your clients believe that it is Blue Ridge's obligation to accept that settlement proposal. While Blue Ridge does not necessarily share your view of the law in this regard, Blue Ridge does propose to do exactly what you contend Blue Ridge is obligated to do: namely, accept the settlement proposal; but before doing so, . . . it is offering your clients an opportunity to reassume their own defense. If we are incorrect in our interpretation of your June 10, 1996 letter in this regard, please advise." As to the question of liability, Blue Ridge stated: "While [you] assert[ ] that your clients 'contest liability' and note[ ] *the existence of evidence to support a claim that Mrs. Bolognesi voluntarily assumed the risk of her injury,* you must candidly concede that there is likewise evidence to support a finding of liability on the part of the Jacobsens as well as evidence negating the defense of assumption of risk."

The Jacobsens responded later the same day. "[Y]our client [Blue Ridge] has no right to settle a claim, absent an agreement with its insured, and seek reimbursement from its insured for the amount of the settlement. The Jacobsens are unwilling to give Blue Ridge that agreement. The Jacobsens have advised you of the reasons why they believe that the defense of the claim is necessary and justified. [¶] . . . [¶] If Blue Ridge desires to settle the underlying lawsuit, it may do so subject to the terms and conditions of the policy. But in pursuing such a course of conduct, it is protecting its own interests. As such, it is not entitled to reimbursement for payments made in settlement."

On June 18, 1996, Blue Ridge responded, stating, "If . . . your position, on behalf of the Jacobsens, is that the case is one of no liability and that you

are not and will not contend that Blue Ridge has an obligation to pay the settlement demand, then please so state in unequivocal terms. Such a statement by you, on behalf of the Jacobsens, would be considered by Blue Ridge as relieving Blue Ridge of any obligations to settle the case for what Blue Ridge considers to be a reasonable settlement figure within its policy limits, and would amount to a waiver by your clients of any claim of breach of the covenant of good faith and fair dealing based upon the failure of Blue Ridge to accept the demand within the policy limits." "Blue Ridge has evaluated and considers the settlement demand reasonable and thus, intends to pay the same under reservation of rights absent an unequivocal statement from you on behalf of the Jacobsens that they wish to either assume their defense or that they consider the case one of no liability and will not contend that Blue Ridge has an obligation to pay the settlement demand."

On June 19, 1996, the Jacobsens responded, essentially asserting that Blue Ridge was depriving its insureds of the opportunity to contest the personal injury action and driving them into bankruptcy.

On June 24, 1996, Blue Ridge responded, disputing these allegations, and reiterating comments made in earlier correspondence. On June 27, 1996, the Jacobsens sent another letter, noting that the plaintiffs had agreed to extend the time to respond to the settlement offer to July 1, 1996. "Your client has the ability to accept this settlement offer. Indeed, it has admitted that the settlement offer is reasonable. The Jacobsens, on the other hand, do not have $300,000." "[T]he Jacobsens will never be in a position to meaningfully respond to any judgment that Blue Ridge might get." "The Jacobsens simply cannot agree to any settlement outside the terms of the policy—they cannot afford it. If Blue Ridge does not accept this settlement offer, it does so at its own risk. If it does accept this settlement offer, it should be in a position to close its books and walk away from this matter."

Having failed to secure the Jacobsens' consent, Blue Ridge then sought to intervene in the underlying action for the purpose of obtaining the trial court's permission to participate in the settlement under a reservation of rights. The motion to intervene was denied. Blue Ridge subsequently accepted the Bolognesis' settlement demand on behalf of the Jacobsens, but over their objection. The trial court in the underlying action found the settlement to be in good faith.

After settlement of the state court action, the stay was lifted in the federal action, and Blue Ridge amended its complaint to assert a claim for reimbursement of the $300,000 settlement payment. Blue Ridge did not seek reimbursement of defense fees and costs.

The district court entered summary judgment in favor of Blue Ridge on the coverage and reimbursement claims, and found the $300,000 settlement to be reasonable. The Ninth Circuit affirmed the district court's findings regarding coverage and the reasonableness of the settlement. Hence, these questions are not before us. The court was "uncertain, however, whether California law provides Blue Ridge with a right to seek reimbursement of the $300,000 settlement under these circumstances, particularly in light of the Jacobsens['] express withholding of their consent to the settlement and their assertion of no liability in the underlying personal injury action." (*Blue Ridge, supra*, 197 F.3d at p. 1011.) "Specifically, it is unclear whether, under [California law], an agreement is a prerequisite to reimbursement." (*Id.* at p. 1013.)

## II. Discussion

### A. *Background*

■ An insurance policy is a contract in which the insurer agrees to pay up to a specified sum should certain losses occur. In exchange, the insured pays the insurer premiums for this coverage against risk of loss. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 45 [65 Cal.Rptr.2d 366, 939 P.2d 766] (*Buss*); *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

■ An insurer has the right and broad duty to defend the insured against third party claims potentially within the policy's coverage. (See, e.g., *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 659, fn. 9 [42 Cal.Rptr.2d 324, 913 P.2d 878].) The duty to indemnify is much narrower. (*Ibid.*; *Buss, supra*, 16 Cal.4th at pp. 46-47, fn. 10.) The homeowner's policy here provided, "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence *to which this coverage applies*, we will: [¶] . . . pay up to our limit of liability for the damages for which the insured is legally liable." (Italics added.) As the language suggests, Blue Ridge was not obligated to indemnify the Jacobsens for noncovered claims. (*Montrose*, at p. 659, fn. 9.)

■ An insurer may agree to defend a suit subject to a reservation of rights. (*Truck Ins. Exchange v. Superior Court* (1996) 51 Cal.App.4th 985, 994 [59 Cal.Rptr.2d 529].) In this manner, an "insurer meets its obligation to furnish a defense without waiving its right to assert coverage defenses against the insured at a later time." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2000) ¶ 7:723, p. 7B-61.) As we stated 35 years ago, "if the insurer adequately reserves its right to assert the

noncoverage defense later, it will not be bound by the judgment. If the injured party prevails, that party or the insured will assert his claim against the insurer. At this time the insurer can raise the noncoverage defense previously reserved." (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 279 [54 Cal.Rptr. 104, 419 P.2d 168], fn. omitted.)

An insurer can reserve its right to assert noncoverage unilaterally merely by giving notice to the insured. (Cf. *American Motorists Ins. Co. v. Allied-Sysco Food Services, Inc.* (1993) 19 Cal.App.4th 1342, 1356 [24 Cal.Rptr.2d 106], disapproved on other grounds in *Buss, supra,* 16 Cal.4th at p. 50, fn. 12.) By accepting the insurer's defense under these circumstances, the insured is deemed to have accepted this condition. (*American Motorists Ins. Co.,* at p. 1356; *Val's Painting & Drywall, Inc. v. Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 586 [126 Cal.Rptr. 267] (*Val's Painting*); see also *Walbrook Ins. Co. Ltd. v. Goshgarian & Goshgarian* (C.D.Cal. 1989) 726 F.Supp. 777, 783-784 [applying California law to conclude reservation of right to recover defense costs effective even when an insured objects to the reservation but accepts the defense]; *Buss,* at p. 61, fn. 27 [dicta regarding unilateral reservation of right to reimbursement for certain defense costs].)

The issue in this case concerns the insurer's ability to seek reimbursement for settlement of what are later determined to be noncovered claims when the insureds withhold consent to the settlement. Two of our cases, *Johansen v. California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9 [123 Cal.Rptr. 288, 538 P.2d 744] (*Johansen*), and *Buss, supra,* 16 Cal.4th 35, are pertinent. In addition, while we may not agree with all of the reasoning in Court of Appeal cases interpreting *Johansen,* they are useful in understanding why Blue Ridge offered the Jacobsens the alternatives it did.

In *Johansen, supra,* 15 Cal.3d 9, we held an insurer that fails to accept a reasonable settlement offer within the policy limits because it does not believe the policy provides coverage, assumes the risk it will be held liable for all resulting damages including a judgment that exceeds the policy limits. (*Id.* at pp. 12, 15.) We further concluded that in determining whether a settlement offer is reasonable, an insurer may not consider the issue of coverage. (*Id.* at p. 16.) Rather "the only permissible consideration in evaluating the reasonableness of the settlement offer . . . [is] whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer." (*Ibid.*)

In so holding in *Johansen,* we rejected the insurer's argument that it was required to settle all cases regardless of whether the policy provided coverage: "[A]n insurer in defendant's position retains the ability to enter an

agreement with the insured reserving its right to assert a defense of noncoverage even if it accepts a settlement offer. If, having reserved such rights and having accepted a reasonable offer, the insurer subsequently establishes the noncoverage of its policy, it would be free to seek reimbursement of the settlement payment from its insured." (*Johansen, supra,* 15 Cal.3d at p. 19.)

It is the single word "agreement" in this portion of *Johansen* that has given rise to the issue in this case. In *Johansen,* the insurer did not seek reimbursement of a settlement. Hence, we were not in that case directly addressing the steps an insurer must take in order to obtain reimbursement of a settlement for a noncovered claim. Nevertheless, as can be seen in Court of Appeal cases interpreting *Johansen,* our use of the term "agreement" has caused uncertainty as to the precise nature of the prerequisites for obtaining reimbursement of reasonable settlement payments.

For example, in *Val's Painting, supra,* 53 Cal.App.3d 576, 580, Allstate Insurance Company (Allstate) agreed to defend Val's Painting and Drywall, under a reservation of rights. It subsequently settled the underlying actions and sought reimbursement from its insured. (*Id.* at p. 581.) The Court of Appeal agreed Allstate was, in general, entitled to recover settlement amounts paid for claims not covered by the policy. (*Id.* at pp. 587-588.) However, the court further concluded that Allstate's reservation of rights letter was "insufficient, without more, to constitute the agreement contemplated by *Johansen.*" (*Id.* at p. 588.) "Nowhere does the letter expressly state that if Allstate settled the case it would look to Val's for reimbursement for any reasonable amounts paid." (*Ibid.*) The statement that Allstate did not waive any rights or admit any obligations under the policy "cannot, without more, reasonably be interpreted to mean that Allstate was given carte blanche to settle the case with what will turn out to be the insured's own money. [¶] Furthermore, there is no allegation in Allstate's pleading that Val's was informed of the settlement offer, that Val's expressly or impliedly agreed that the claimants should be paid a total of $3,200 as a reasonable settlement, that the settlement was reasonable, that Val's was given an opportunity to assume the defense if Val's did not think the settlement reasonable, or that Val's expressly or impliedly agreed that if such sum was paid the question of policy coverage should be left to future determination." (*Ibid.*) The court stated: "Absent an agreement by the insured—express or implied in fact—that the insurer may commit the insured's own fund toward any reasonable settlement, the insurer is not permitted to seek reimbursement for a particular settlement unless it has secured specific authority to make that settlement or has notified the insured of a reasonable offer by the claimant and given the insured an opportunity to assume the defense." (*Ibid.*) The court remanded to allow Allstate the opportunity to amend its cross-complaint. (*Id.* at pp. 588-589.)

In *Maryland Casualty Co. v. Imperial Contracting Co.* (1989) 212 Cal.App.3d 712, 717 [260 Cal.Rptr. 797] (*Maryland*), Imperial Contracting Company (Imperial) refused to consent to Maryland Casualty Company's (Maryland) participation in a proposed settlement under a reservation of rights. The trial court in the third party action issued an order allowing Maryland to participate in the settlement without Imperial's consent and under a reservation of rights. (*Id.* at p. 718.) The order was made "expressly without prejudice to Imperial's rights to litigate all issues, including liability and the amount of damages, in any later action to recover amounts paid in the settlement." (*Ibid.*) The order further provided that Maryland did not waive its rights in the declaratory relief action and if it prevailed in that action it could seek to recover all sums expended in settlement from its insured. (*Ibid.*) The settlement was subsequently found by the same trial court to be reasonable and in good faith. (*Ibid.*)

The Court of Appeal held Maryland was entitled to seek reimbursement of the settlement from its insured. (*Maryland, supra*, 212 Cal.App.3d at p. 714.) Maryland had obtained an order allowing it to participate in the settlement, and that settlement was subsequently found to be in good faith. (*Id.* at p. 721.) In addition, Maryland reserved its right to dispute coverage at the time it assumed the defense two years prior to settlement. (*Id.* at pp. 721-722.) Moreover, Imperial was notified of the settlement offer, and its "failure to consent was tied solely to Maryland's failure to settle earlier for a more reasonable sum. In other words Imperial did not tell Maryland that it was not liable or that it wanted to take over the litigation. [¶] . . . [I]n view of the insured's refusal to agree, Maryland properly sought and obtained trial court sanction to join in the settlement." (*Id.* at p. 722.) Under these circumstances, Maryland satisfied the concerns underlying *Val's Painting*, and was not required to offer Imperial an opportunity to assume the defense. (*Maryland*, at p. 722.)

In *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1392-1393 [25 Cal.Rptr.2d 242], the trial court granted the insurer, Golden Eagle Insurance Company, authority to attempt to settle, found the resulting settlement to be reasonable and in good faith, but further found the insurer was not entitled to seek reimbursement. The Court of Appeal agreed, concluding the insurer was estopped from denying coverage because it accepted defense of the insured's suit without a reservation of rights, failed to afford the insureds a reasonable opportunity to assume their own defense, and did not have the insured's authority for the settlement made in the underlying action. (*Id.* at pp. 1390-1391.) The Court of Appeal distinguished *Maryland* on the ground that in *Maryland*, "the insured knew from the outset it might be responsible for paying a judgment in the underlying action. . . .

Thus, when it appeared the case might be in a position to be settled, there was in fairness no need for the insurer to offer the defense to the insured." (*Golden Eagle*, at p. 1393.) Here, however, it "was not until virtually the eve of trial that Golden Eagle first informed the [insureds] it was disputing coverage after all and it was not until trial was underway that Golden Eagle first informed the [insureds] of its intent to settle for an amount in excess of its alleged policy limits." (*Ibid.*)

In *Buss*, *supra*, 16 Cal.4th 35, we held an insurer may seek reimbursement from the insured for defense costs that can be allocated solely to claims not even potentially covered. (*Id.* at pp. 39-40, 50.) We concluded reimbursement should be available because the insurer had not bargained to bear these costs and the insured had not paid the insurer premiums for the risk. (*Id.* at pp. 50-51.) "The insurer therefore has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual. As stated, under the law of restitution such a right runs against the person who benefits from 'unjust enrichment' and in favor of the person who suffers loss thereby. The 'enrichment' of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed 'unjust.' " (*Id.* at p. 51, fn. omitted.)

In addition, we stated in *Buss*, "We note that the Court of Appeal assumed that, in order to obtain reimbursement for defense costs, the insurer must reserve its right thereto. To the extent that this right is implied in law as quasi-contractual, it *must* indeed be reserved. (Cf. 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 92, p. 123 [stating that, '[i]n an action in quasi-contract . . . , a *demand* is ordinarily a necessary prerequisite' (original italics)].) Through reservation, the insurer gives the insured notice of how [the insurer] will, or at least may, proceed and thereby provides [the insured] an opportunity to take any steps that it may deem reasonable or necessary in response—including whether to accept defense at the insurer's hands and under the insurer's control [citation] or, instead, to defend itself as it chooses. To the extent that this right is implied in fact in the policy as contractual, it *should* be reserved. Through reservation, the insurer avoids waiver." (*Buss*, *supra*, 16 Cal.4th at p. 61, fn. 27.) We further stated, in dicta,[1] "We also note that the Court of Appeal was evidently of the view that the insurer can reserve its right of reimbursement for defense costs by itself, without the insured's agreement. Such a view is in accord with the 'modern

---

[1] In *Buss*, "[n]ot only did [the insurer] reserve all its rights, contractual and otherwise," but, "receiving consideration, Buss agreed thereto." (*Buss*, *supra*, 16 Cal.4th at p. 61, fn. 27.) Therefore, our comment regarding the insurer's ability to unilaterally reserve its right to reimbursement of defense costs was dictum.

trend.' (*Walbrook Ins. Co. Ltd.* v. *Goshgarian & Goshgarian, supra,* 726 F.Supp. at p. 783.) More important, it is sound. Because the right is the insurer's alone, it may be reserved by it unilaterally." (*Buss,* at p. 61, fn. 27.)

## B. *Analysis*

As noted, the issue here is whether Blue Ridge may seek reimbursement for the settlement paid on the Jacobsens' behalf even in the absence of the Jacobsens' express agreement. We conclude it may. Here, the Jacobsens were on notice both by the policy language and by Blue Ridge's express reservation of rights when it assumed the defense that Blue Ridge might seek reimbursement from them for what were ultimately determined to be non-covered claims. Moreover, Blue Ridge notified the Jacobsens of its intention to accept what was ultimately determined to be a reasonable settlement offer, and offered the Jacobsens the opportunity to assume their own defense. Under such circumstances, Blue Ridge satisfied the prerequisites for seeking reimbursement for noncovered claims included in a reasonable settlement payment: (1) a timely and express reservation of rights; (2) an express notification to the insureds of the insurer's intent to accept a proposed settlement offer; and (3) an express offer to the insureds that they may assume their own defense when the insurer and insureds disagree whether to accept the proposed settlement.

Under *Johansen,* if an insurer fails to accept a reasonable settlement offer within the policy limits, and the judgment exceeds the policy limits, the insurer risks liability for the entire judgment and any other damages incurred by the insured. Moreover, the insurer may not consider the issue of coverage in determining whether the settlement is reasonable. (*Johansen, supra,* 15 Cal.3d at pp. 12, 15, 16.)

In light of *Johansen,* were we to conclude insureds could, as in this case, refuse to assume their own defense, insisting an insurer settle a lawsuit or risk a bad faith action, but at the same time refuse to agree the insurer could seek reimbursement should the claim not be covered, the resulting Catch-22 would force insurers to indemnify noncovered claims. If an insurer could not unilaterally reserve its right to later assert noncoverage of any settled claim, it would have no practical avenue of recourse other than to settle and forgo reimbursement. An insured's mere objection to a reservation of right would create coverage contrary to the parties' agreement in the insurance policy and violate basic notions of fairness.

Moreover, applying *Buss*'s reasoning regarding reimbursement of defense costs to reimbursement of reasonable settlement costs, the insurer only has a

duty to indemnify the insured for covered claims, and no duty to pay for noncovered claims because the insured did not pay premiums for such coverage. (See *Buss, supra,* 16 Cal.4th at pp. 50-51.) Hence, if the insurer, as in this case, satisfies the prerequisites noted above, it should be deemed to have an implied-in-law right of reimbursement to avoid the insureds' unjust enrichment. "Even if the policy's language were unclear, the hypothetical insured could not have an objectively reasonable expectation that it was entitled to what would in fact be a windfall." (*Id.* at p. 51.)

Indeed, the right to reimbursement is implied by the terms of the insurance policy. Here, Blue Ridge agreed that as to "bodily injury or property damage caused by an occurrence to which this coverage applies," the insurer would indemnify the insured. By implication, Blue Ridge had no obligation to pay for noncovered claims. Because notice was given at the outset both by the reservation of rights and policy language that Blue Ridge might seek reimbursement if there were no coverage, the Jacobsens had full knowledge of the possible consequences of accepting the defense by the insurer. They could not later object on the ground Blue Ridge was not entitled to condition payment of the settlement on reservation of its right to seek reimbursement for any noncovered claim.

In addition, the Jacobsens conceded in their correspondence with Blue Ridge that Blue Ridge had the right under the policy to settle third party claims against the Jacobsens.[2] It seems anomalous to conclude that if Blue Ridge exercised this right over the insureds' objection to the insurer's reservation of right to seek reimbursement, it forfeited its right to later recoup payments it was not contractually obligated to make.

■ Finally, as the amici curiae[3] note, in addition to avoiding the insured's unjust enrichment, a rule allowing unilateral reservation of the right to seek reimbursement of settlement payments for noncovered claims advances significant public policy considerations. In particular, it encourages insurers to defend and settle cases for which insurance coverage is uncertain. In so doing, it transfers from the injured party to the insurer the risk that the insured may not be financially able to pay the injured party's damages. Although the insurer may preserve its right to seek reimbursement from its insured, as a practical matter the insured may not have the assets necessary to compensate the insurer in full or even in part.

The Jacobsens assert that an insurer should not be permitted to terminate its defense obligation by settling the claim under a unilateral reservation of

---

[2]The policy provided: "We may investigate and settle any claim or suit that we decide is appropriate."

[3]Amici curiae are American Insurance Association, American International Group, Inc., National Association of Independent Insurers, and Truck Insurance Exchange.

rights or by making a conditional tender of a settlement payment and then forcing the insured to litigate with the insurer or assume its own defense. They argue that through a unilateral action, the insurer turns an unconditional promise to defend its insured through a final settlement or judgment "into a promise that the insurer can terminate at the drop of a hat."

Here, however, Blue Ridge was *obligated* to accept a reasonable settlement offer as part of its duty of good faith and fair dealing or risk excess exposure. (*Johansen, supra,* 15 Cal.3d at pp. 12, 16, fn. 5; *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 430 [58 Cal.Rptr. 13, 426 P.2d 173].) The Jacobsens' apparent objection to the settlement was not that the offer was unreasonable, but that Blue Ridge was reserving its right to seek reimbursement should the claims not be covered by the policy. Indeed, the Jacobsens took the position that since Blue Ridge had determined the settlement was reasonable, it had an obligation to accept the settlement or " 'blow[]' " its policy limits. Hence, they sought to receive either the benefit of an unconditional settlement of an uncovered claim, or, in the alternative, should Blue Ridge fail to settle, the opportunity to make a bad faith claim. By refusing to agree Blue Ridge could reserve its right to reimbursement, or that the settlement offer was unreasonable, or that they would assume their own defense, the Jacobsens essentially demanded that Blue Ridge settle the case without any recourse against the Jacobsens should the claim not be covered.

The Jacobsens note that Blue Ridge could add a reimbursement provision to its insurance policy or include a deductible. However, as we stated in *Buss* the right to reimbursement is implied in law and need not be expressly stated in the policy. (*Buss, supra,* 16 Cal.4th at p. 51, fn. 13.) Moreover, as discussed above, such a reimbursement right is implicit in the policy terms which provide indemnification only for *covered* claims.

The Jacobsens also summarily argue that Blue Ridge is a volunteer, and hence not entitled to reimbursement. It is not apparent how an insurer that has been precluded from earlier resolving the question of coverage, and that is obligated to accept a reasonable settlement or risk excess exposure, acts as a volunteer in accepting that settlement merely because its insured objects to its reservation of the right to seek reimbursement. As the court stated in *State Farm & Casualty Co. v. Cooperative of American Physicians, Inc.* (1984) 163 Cal.App.3d 199, 204 [209 Cal.Rptr. 251], "Absent a final judgment of noncoverage as to any of the policies, all insurers were also under a duty to settle once liability of the insureds became reasonably clear. [Citations.] And failure of the insurers to settle under those circumstances might well have exposed them to bad faith claims by the insureds. [Citations.] Thus, the ruling is not defensible on the basis State Farm was a volunteer."

The Jacobsens also argue without elaboration that at the time of settlement (and even now) Blue Ridge knew of no evidence which created any liability on the part of the Jacobsens to the state court plaintiffs, and generally contest the Ninth Circuit's conclusion that the settlement was reasonable. They assert that the suggestion that the Jacobsens were unjustly enriched by an insurer that settled a no-liability claim for $300,000 "defies logic or reason." As noted, however, the issue of whether the settlement was reasonable, which includes a consideration of the Jacobsens' potential liability, is not before us. Moreover, if the Jacobsens believed they had no liability, they were free to assume their own defense.

Finally, the Jacobsens rely on certain out-of-state cases, none of which persuade us to reach a different result. In *Texas Assn. of Counties County Gov. Risk Management Pool v. Matagorda County* (Tex., Dec. 21, 2000, No. 98-0968) 2000 WL 1867945, the Texas Supreme Court held that an insurer was not entitled to reimbursement under a theory of unjust enrichment under facts similar to those in this case. (*Id.* at pp. *1-2, 5.) In particular, the court concluded *Buss* was inapplicable in the settlement context. (*Id.* at p. *5.) As discussed above, we disagree. The Texas high court further noted that an insurer who cannot obtain the insured's consent to settle may "seek prompt resolution of the coverage dispute in a declaratory judgment action" prior to the time the insured's liability is decided in the underlying suit. (*Id.* at p. *6.) In California, "we have been solicitous of the fact that a declaratory relief action concerning coverage issues may need to be stayed to avoid prejudice to the insured in its defense of an underlying lawsuit. (*Montrose Chemical Corp.* v. *Superior Court* [(1993)] 6 Cal.4th [287,] 301 ['To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action.'].)" (*Foster-Gardner, Inc.* v. *National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 880 [77 Cal.Rptr.2d 107, 959 P.2d 265].) That was done here. Unlike the case in *Texas*, Blue Ridge did not have the opportunity to resolve the coverage issue before the settlement in the underlying action was offered. In *Mt. Airy Ins. Co.* v. *Doe Law Firm* (Ala. 1995) 668 So.2d 534, the Alabama Supreme Court held an insurer making a settlement payment despite its insured's refusal to sign a nonwaiver of reimbursement agreement acts as a volunteer, a conclusion we reject above. (*Id.* at pp. 536-539.) Moreover, it does not appear in *Mt. Airy* that the insurer offered the insured an opportunity to assume its own defense. (*Id.* at p. 536.) In *Medical Malpractice Jt. Und.* v. *Goldberg* (1997) 425 Mass. 46 [680 N.E.2d 1121], the insurer not only failed to offer the insured the opportunity to assume its own defense, the insurer did not even notify the insured of the settlement offer prior to accepting it. (*Id.* at pp. 1126, 1129.)

Disposition

We answer the question certified by the Ninth Circuit Court of Appeals in the affirmative.

Kennard, J., Baxter, J., and Chin, J., concurred.

**GEORGE, C. J.**—I concur in the result reached by the majority opinion and in much of its analysis, with the understanding that nothing contained therein alters the established standard—not mentioned by the majority—governing an insurer's evaluation of the reasonableness of a settlement offer in this context. "[I]n determining whether to settle[,] the insurer must give the interests of the insured at least as much consideration as it gives to its own interests . . . ." (*Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173]; see also *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 44 [86 Cal.Rptr.2d 855, 980 P.2d 407] ["The assumption of [the duty to defend] obligates the insurer to give at least as much consideration to the welfare of its insured as it gives to its own interests so as not to deprive the insured of the benefits of the insurance policy"].) An insurer assesses whether a settlement offer is reasonable by determining whether accepting the offer is "the most reasonable manner of disposing of the claim . . . ." (*Crisci v. Security Ins. Co.*, *supra*, 66 Cal.2d at p. 430.)

Mosk, J., and Werdegar, J., concurred.

**MOSK, J.**—I concur with the result and much of the reasoning of the majority opinion and in the Chief Justice's concurring opinion. I write separately to address an issue raised only implicitly by this case. As the majority state: "[T]he Jacobsens took the position that since Blue Ridge had determined the settlement was reasonable, it had an obligation to accept the settlement or ' "blow[]" ' its policy limits. Hence, they sought to receive either the benefit of an unconditional settlement of an uncovered claim, or, in the alternative, should Blue Ridge fail to settle, the opportunity to make a bad faith claim." (Maj. opn., *ante*, at p. 504.) In rejecting this position as fundamentally unfair, the majority suggest that the insured has basically two options when it disagrees with an insurer about whether to settle a case for which the insurer claims noncoverage: (1) to accept the settlement anyway, including the insurer's reservation of rights that may make the insured liable; or (2) to assume its own defense, however financially burdensome that may be.

A third option, that would neither place the insurer in a "Catch-22" position (maj. opn., *ante*, at p. 502) nor place an undue burden on the insured

is to allow the insured to refuse settlement and still retain the insurance defense, but, consistent with that refusal, waive any right to sue the insurance company for bad faith failure to refuse a settlement. This third option would not allow a windfall for the insured, but it would permit the insured the discretion of refusing a settlement it considers unfair and for which it may ultimately be financially responsible. Indeed, the insurer offered this option in the present case. This option is in harmony with the principle that the insured should truly consent to a settlement in such a situation. (See *Val's Painting & Drywall, Inc. v. Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 588 [126 Cal.Rptr. 267].) Without this option, the insured is forced to choose between accepting an unfair settlement for which it may be liable and having to pay its own legal expenses up front. Although as a practical matter the insured may rarely exercise this third option, and did not seek to do so in this case, it should nonetheless have it.

Werdegar, J., concurred.