# United States Court of Appeals
## For the First Circuit

No. 22-1959

BERKLEY NATIONAL INSURANCE COMPANY,

Plaintiff, Appellee,

v.

ATLANTIC-NEWPORT REALTY LLC,

Defendant, Appellant,

GRANITE TELECOMMUNICATIONS, LLC

Defendant/Third Party Plaintiff, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

Timothy H. Madden, with whom Nathaniel R.B. Koslof and Donnelly, Conroy & Gelhaar, LLP were on brief, for appellants Atlantic-Newport Realty LLC and Granite Telecommunications, LLC.
Michael F. Aylward, with whom Morrison Mahoney LLP was on brief, for appellee Berkley National Insurance Company.
Laura A. Foggan and Crowell & Moring LLP on the brief for amicus curiae Complex Insurance Claims Litigation Association.

February 22, 2024

**BARRON, Chief Judge**.  The genesis of this appeal is a liability insurer's suit under Massachusetts law against two of its insureds.  The insurer brought the suit in the United States District Court for the District of Massachusetts after it paid to settle a personal-injury suit against the insureds.  The suit sought restitution for both the payment that the insurer made to settle the suit and the costs that it incurred to defend the insureds against that suit.  The suit also sought a declaratory judgment that the insurer had no duty to defend or indemnify the insureds with respect to the personal-injury claims that the insureds were facing.

The District Court denied the insureds' motion for judgment on the pleadings and, in response to the insurer's summary-judgment motion, granted the motion in part and then issued a final judgment that ordered the insureds to pay restitution for both the insurer's defense costs and its settlement payment.  See Berkley Nat'l Ins. Co. v. Granite Telecomms. LLC (Berkley II), 617 F. Supp. 3d 77, 84 (D. Mass. 2022) (granting partial summary judgment).  The insureds now challenge both the denial of their motion for judgment on the pleadings and the grant of the insurer's motion for summary judgment.  They do so on the ground that these rulings conflict with Massachusetts law governing when a liability insurer who has chosen to defend its insureds may seek reimbursement from its insureds.  Because we agree with the

- 2 -

insureds that the rulings are at odds with Massachusetts law, we reverse the District Court's order denying the motion for judgment on the pleadings. In consequence, we also vacate both the grant of summary judgment to the insurer on the insurer's claim for restitution and the judgment ordering the insureds to reimburse the insurer. Moreover, because of our determination that the insureds are entitled to judgment on the pleadings as to the insurer's claim for restitution, we dismiss the remainder of the appeal as moot.

## I.

The plaintiff-insurer is Berkley National Insurance Company ("Berkley"). The defendants-insureds are Granite Telecommunications, LLC ("Granite"), which is the primary insured on its insurance policy with Berkley ("Policy"), and Atlantic-Newport Realty LLC ("Atlantic"), which the Policy names as an additional insured. Berkley also named Stephen Papsis as a defendant in the suit, though he is not a party to this appeal.

Papsis figured in Berkley's suit because he was the plaintiff in a personal-injury suit that he had brought against Atlantic and Granite in Massachusetts state court. Papsis's complaint alleged that Atlantic and Granite were liable to him under Massachusetts law for a severe foot injury that he had

suffered from a sewage backup that had occurred while he was working in a cafeteria that Granite operated.

In response to the suit, Atlantic and Granite sought coverage from Berkley for any liability that they might incur from Papsis's claims against them. Atlantic and Granite also requested that Berkley assume their defense against Papsis's suit pursuant to Berkley's duty under the Policy to do so. Berkley responded that it had no duty to indemnify the insureds for their claim for coverage under the Policy because of the Policy's pollution exclusion. Berkley did ultimately agree to assume the defense of Papsis's claims for Atlantic and Granite, though it also expressly made a "full" reservation of the right to disclaim coverage of the insureds' claims under the Policy and "reserv[ed] its rights to bring an action for declaratory relief to be relieved of any continuing obligation to provide a defense to this case" (emphasis added). Berkley stated in making the latter reservation, however, that, "[p]ending the receipt of such a determination, [it would] provide a full defense to the Papsis case and [would] pay all reasonable costs and fees associated with its defense."

Berkley thereafter proceeded to defend Atlantic and Granite in Papsis's suit. But, while doing so Berkley filed its initial complaint against Atlantic and Granite in the District of

- 4 -

Massachusetts. Berkley thereby initiated the suit that is at issue in this appeal.

In the initial complaint against Atlantic and Granite, Berkley sought a declaratory judgment, based on Massachusetts law, that it had no duty to cover their Papsis-related claim for coverage under the Policy. Berkley did so not only based on the Policy's pollution exclusion that we have mentioned above but also based on an exclusion in the Policy for bodily injury or property damage resulting "in whole or in part" from "the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any 'fungi' or bacteria on or within a building or structure." Berkley's complaint also included a claim for restitution under Massachusetts law based on the amount that Berkley had paid to defend the insureds against Papsis's suit.

Atlantic and Granite answered Berkley's complaint. They also brought counterclaims for a declaratory judgment that, under Massachusetts law, Berkley had a duty to defend them against Papsis's claims and to indemnify them for any liability that they faced on those claims.[1]

Following the filings, Papsis settled his suit against the insureds. The settlement payment was made by Berkley, which

---

[1] The parties also brought third-party claims for indemnification against Papsis's employer, Lessing's Food Service Management Corporation ("Lessing's"), and its insurer, the Hanover

then amended its complaint in its pending suit against Atlantic and Granite by adding a request for restitution for the settlement payment that it had made to Papsis.

Atlantic and Granite moved for judgment on the pleadings as to Berkley's restitution claim, which by then sought reimbursement not only for Berkley's defense costs but also for the payments that it had made to settle Papsis's suit. The District Court denied the insureds' motion. See Berkley Nat'l Ins. Co. v. Granite Telecomms. LLC (Berkley I), 594 F. Supp. 3d 233 (D. Mass. 2022). Following discovery, Berkley moved for summary judgment with respect to its then-pending claims against the insureds for: (1) a declaratory judgment that, based on a "pollution" exclusion in the Policy, it had no duty to defend or indemnify them against Papsis's claims in his suit; (2) a declaratory judgment that, based on a "fungi or bacteria" exclusion in the Policy, it had no duty to defend or indemnify them against Papsis's claims in his suit; and (3) restitution for its costs in defending them against Papsis's claims and for the expenditures that it made to settle those claims.

In response to Berkley's motion, the District Court determined that Berkley was entitled to summary judgment on its

Insurance Company ("Hanover"). The District Court granted summary judgment in favor of Lessing's and Hanover, but that ruling is not at issue in this appeal.

claim for a declaratory judgment concerning the applicability of the fungi or bacteria exclusion. Berkley II, 617 F. Supp. 3d at 81-83. The District Court went on to explain, however, that, given that ruling, there was no need to resolve Berkley's motion for summary judgment as to the claim for a declaratory judgment concerning the applicability of the pollution exclusion. Id. at 83 n.2. The District Court then granted final judgment to Berkley, declaring that Berkley "had no obligation to defend or indemnify [the insureds] in the personal injury lawsuit brought against them by Stephen Papsis" and, with respect to the restitution claim, requiring the insureds to reimburse Berkley for the sums that it paid to defend and settle Papsis's suit.

Atlantic and Granite timely filed this appeal. Their appeal challenges the District Court's ruling denying their motion for judgment on the pleadings, the District Court's ruling granting summary judgment to Berkley on its claim for restitution of the defense costs and settlement payment, and the final judgment ordering them to reimburse Berkley for those sums.

## II.

Before we turn to the merits of the challenges that Atlantic and Granite bring to the District Court's rulings, we must assure ourselves that we have subject-matter jurisdiction. See Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54 (1st Cir. 2006). Berkley contends

that we do based on 28 U.S.C. § 1332, which grants federal courts subject-matter jurisdiction when the amount in controversy exceeds $75,000 and the parties are completely diverse. Parties are completely diverse when "no plaintiff [is] a citizen of the same state as any defendant." BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 695 (1st Cir. 2023); see also 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter . . . is between . . . citizens of different States . . . .").

There is no question that § 1332's amount-in-controversy requirement is met here. There is a question, though, about whether § 1332's complete-diversity requirement is also met. The question arises because, although Berkley, as a corporation incorporated in Iowa with its principal place of business in that state, is plainly a citizen of Iowa, see BRT, 68 F.4th at 696, the citizenship of both Atlantic and Granite is less evident.

Atlantic and Granite, unlike Berkley, are limited-liability companies. They thus each have the "citizenship of all of" the members of each company. Pramco, 435 F.3d at 54. In addition, because the members of each of these limited-liability companies are trusts, and a trust is itself an "unincorporated association[]," the "members' citizenships are relevant too." BRT, 68 F.4th at 696. Moreover, "the process is 'iterative,' and a party must 'trace the citizenship of any member that is an

- 8 -

unincorporated association through however many layers of members or partners there may be.'" Id. (quoting D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 126-27 (1st Cir. 2011)).

Berkley alleged in its complaint that the parties were completely diverse for purposes of § 1332 because Granite was a "Florida limited liability company" and Atlantic was a "Delaware limited liability company." But neither the complaint nor the record developed during discovery revealed the citizenships of Granite's or Atlantic's members. We therefore asked the insureds to submit supplemental affidavits to show the citizenships of Granite's and Atlantic's members on the date that this action was filed. See Bearbones, Inc. v. Peerless Indem. Ins. Co., 936 F.3d 12, 14 (1st Cir. 2019) (following a similar procedure in an appeal from a grant of summary judgment after noticing that certain parts of the record undermined the basis for diversity jurisdiction alleged in the complaint).

In the first set of affidavits, Atlantic and Granite contended both that none of the trustees of their member trusts was a citizen of Iowa and that all their members were "traditional trusts." Atlantic and Granite asserted on that basis that there was complete diversity. That assertion would suffice, however, only if the trusts in question "exist[ed] as . . . fiduciary relationship[s] and not as . . . distinct legal entit[ies]." BRT,

- 9 -

68 F.4th at 697-98 (quoting Americold Realty Tr. V. ConAgra Foods, Inc., 577 U.S. 378, 383 (2016)).  In that event, those trusts would, as a matter of law, "take the citizenship of [their] trustee[s]" rather than "the citizenship of all [their] members." Id. (final alteration in original).  We therefore asked Atlantic and Granite to show cause why there was jurisdiction by providing us with any additional factual support for their characterization of the members trusts as being of the kind described in BRT.  Cf. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

The insureds responded by submitting affidavits that identified the specific state statutes under which each of the trusts at issue was organized at the relevant time.  Having now reviewed those affidavits, and the statutes that they reference, we conclude that Atlantic and Granite have shown that their member trusts are of the kind described in BRT, see 68 F.4th at 697 (noting that in making this determination "courts have looked to whether [the entity referred to as a 'trust'] can sue and be sued, and the extent to which it is otherwise treated as a juridical person under state law" (citing Americold, 577 U.S. at 382)), and that the trustees of each member trust are citizens of states other than Iowa.  Thus, we are satisfied that there is complete diversity

of citizenship among the parties, such that we have subject-matter jurisdiction under 28 U.S.C. § 1332.

## III.

We begin our analysis of the merits with Atlantic's and Granite's challenge to a portion of the District Court's denial of their motion for judgment on the pleadings that concerns Berkley's Massachusetts-law claim for restitution. The portion of the ruling in question pertains to Berkley's restitution claim for reimbursement of the payment that it made to settle Papsis's lawsuit.

Atlantic and Granite premised their motion as to Berkley's claim for restitution of the settlement payment on the decision of the Massachusetts Supreme Judicial Court ("SJC") in Med. Malpractice Joint Underwriting Ass'n of Mass. v. Goldberg, 680 N.E.2d 1121 (Mass. 1997). Atlantic and Granite contend on appeal that the District Court's ruling must be reversed because it conflicts with Goldberg. Reviewing de novo, while accepting as true all well-pleaded facts and drawing all factual inferences in Berkley's favor, see Shay v. Walters, 702 F.3d 76, 79 (1st. Cir. 2012), we agree.

## A.

In Goldberg, as here, a liability insurer sought restitution from its insured after funding a settlement payment that it had paid while defending the insured under a reservation

of the right to later disclaim coverage.  See Goldberg, 680 N.E.2d at 1123-24.  The insured in Goldberg was a psychiatrist who had been sued by a former patient.  Id. at 1122.

The insurer had defended the insured against the lawsuit "subject to the express reservation of the . . . right to disclaim coverage of the claims" if they turned out not to be covered by the liability policy.  Id. at 1123.  "[F]rom the outset [the insured] sought to settle [the former patient's] claims and . . . communicated that desire to [the insurer]."  Id.

Against the advice of the insured's lawyer, the insurer declined to make any serious settlement offer and continued to reiterate its coverage position when entreated to settle by the insured.  See id. at 1123-25.  The case proceeded to trial, and the jury then awarded the former patient damages on her negligence claim.  See id. at 1125.  The trial court dismissed the former patient's separate Chapter 93A claim, however, holding that the provision did not apply to the psychiatrist-patient relationship, and the parties cross-appealed.  See id. at 1125-26.

Thereafter, the insurer determined that the former patient's "appeal posed unusual risk" because the appeal could result in "a broad holding supporting the applicability of [Chapter] 93A to medical malpractice cases."  Id. at 1126, 1126 n.19. The insurer ultimately accepted an offer to settle the case, before the appeal was decided, for an amount greater than the

original jury award.  See id. at 1126.  The insurer accepted this offer without consulting with the insured or his personal attorney. See id.  The insurer then sued the insured for restitution of the settlement payment that the insurer had made, and the case ultimately reached the SJC, which affirmed the dismissal of the insurer's restitution claim.  See id. at 1127-28.

The SJC noted at the outset that "the policies at issue do not contain a provision for reimbursement to [the insurer] of any settlement paid by it," and the insurer could not "point to any other express agreement with [the insured] for reimbursement for any settlement paid by it."  Id. at 1128.  The SJC went on to conclude:

> Where an insurer defends under a reservation of rights to later disclaim coverage . . . it may later seek reimbursement for an amount paid to settle the underlying tort action only if the insured has agreed that the insurer may commit the [insurer's][2] own funds to a reasonable settlement with the right later to seek reimbursement from the insured, or if the insurer secures specific authority to reach a particular settlement which the insured agrees to pay.  The insurer may also notify the insured of a reasonable settlement offer and give the insured an opportunity to accept the offer or assume its own defense.[3]

[2] Following the SJC, we replace "insured's" with "[insurer's]" when quoting this key sentence.  See Metro. Life Ins. Co. v. Cotter, 984 N.E.2d 835, 849, 849 n.20 (Mass. 2013).

[3] In two footnotes, the SJC pointed to two California appellate court cases as illustrative of the approach that it was adopting.  See Goldberg, 608 N.E.2d at 1129 nn.30 & 32.  The first case was Val's Painting & Drywall, Inc. v. Allstate Ins. Co., which

- 13 -

Id. at 1129 (emphasis added).

The SJC then concluded that, because "[n]one of those conditions was met by [the insurer]," the insurer's reimbursement claim could not proceed. Id. The SJC also noted that there were "facts specific to th[at] case that len[t] further support to [its] conclusion" that the reimbursement claim at issue could not proceed. Id. The facts to which the SJC referred included that the insurer "settled . . . to cut its own potential exposure should its coverage position not prevail," that the insured's excess insurer "was in serious financial trouble," and that there was a

---

held under California law that "[a]bsent an agreement by the insured -- express or implied in fact -- that the insurer may commit the insured's own fund[s] toward any reasonable settlement, the insurer is not permitted to seek reimbursement for a particular settlement unless it has secured specific authority to make that settlement or has notified the insured of a reasonable offer by the claimant and given the insured an opportunity to assume the defense." 126 Cal. Rptr. 267, 274 (Cal. Ct. App. 1975). The second case was Md. Cas. Co. v. Imperial Contracting Co., which again allowed under California law a reimbursement claim to proceed where, after an insured refused to authorize an insurer to fund a settlement subject to a reservation of rights, the insurer secured a court order authorizing it to enter into the settlement and declaring it reasonable. See 260 Cal. Rptr. 797, 802-04 (Cal. Ct. App. 1989). The SJC characterized Md. Cas. as concluding that an insurer facing an uncooperative insured "has three options: it can turn over the defense to the insured and [seek] declaratory relief concerning coverage; it can relinquish its earlier reservation of rights and acknowledge coverage; or it can seek court approval of the proposed settlement." Goldberg, 608 N.E.2d at 1129 n.32 (noting the insurer "had similar options here, none of which it exercised").

- 14 -

"possibility that" treble damages would be awarded to the insured's former patient because of the failure to "engage in good faith settlement discussions with her." Id. at 1129-30.

Finally, the SJC rejected the insurer's "claim that an insured can 'whipsaw' an insurer by demanding that it settle the case (as Goldberg did here) while, at the same time, refusing to agree to reimburse the insurer should it be determined that there is no coverage for the claims asserted." Id. at 1130. The SJC explained that such an insurer could not claim it was whipsawed into funding the settlement because it had other options "[o]nce [it] had negotiated the best [settlement] offer from [the patient]," including "ask[ing] [the insured] for authority to pay" the negotiated amount to settle or seeking "an agreement from [the insured] that it would settle the lawsuit, as [the insured] had instructed, only if [the insured] agreed to reimburse [the insurer] if its coverage position were sustained." Id. As the insurer pursued none of those options, Goldberg affirmed the dismissal of the reimbursement claim. See id. at 1130.

**B.**

The District Court described "the heart of" the dispute as concerning "how the [SJC's] decision in [Goldberg] is to be

- 15 -

applied." Berkley I, 594 F. Supp. 3d at 235. The District Court further explained:

> [Insureds] contend that Goldberg stands for the proposition that an insurer cannot recoup a settlement payment unless the insured has expressly agreed to such an arrangement, and that an insurer's unilateral reservation of the right to seek reimbursement . . . without such an agreement will always be ineffective. For its part, Berkley argues that [insureds'] unnuanced reading of Goldberg would "render toothless the remedies . . . by which insurers may protect their rights while still carrying out their duty to defend cases that present coverage issues."

Id.

In denying the motion, the District Court determined that Goldberg did not bar the settlement-payment-based part of Berkley's restitution claim from going forward. See id. at 236. The District Court explained that, unlike the insured in Goldberg, Atlantic and Granite "participated fully in the mediation process, and . . . mutually agreed on the amount of the settlement award," and "[m]ore importantly," that their "actions in coercing Berkley to pay the full settlement amount essentially left Berkley without the viable options that were available to [the insurer] in Goldberg." Id.

The District Court emphasized that the pleadings showed that the insureds "portentously warned Berkley in an email that '[s]hould [it] fail to make settlement offers in line with defense counsel's recommendations, and/or make unreasonable demands on the

- 16 -

[insureds] to fund a portion of any settlement themselves, [Berkley] will be risking significant exposure under [Mass. Gen. Laws ch.] 176D,'" id., which prohibits various forms of unfair and deceptive insurance practices, see Mass. Gen. Laws ch. 176D, § 3. The District Court concluded that the record supportably established that the insureds "'whipsawed' Berkley into . . . paying the full settlement amount and maintaining its unilateral reservation of its right to seek reimbursement." Berkley I, 594 F. Supp. 3d at 236 (quoting Goldberg, 680 N.E.2d at 1130). The District Court therefore concluded that "[i]t would be fundamentally unfair to strip an insurer" in Berkley's position "of any legal recourse" to pursue reimbursement. Id. Accordingly, the District Court held that the pleadings failed to show that Berkley's claim for restitution of the expenditures on the settlement of the Papsis claim could not go forward under Massachusetts law. Id.

### C.

There is no question that, if Goldberg remains controlling law in Massachusetts, then it controls the outcome here -- unless, of course, Goldberg is somehow distinguishable. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 58 (1st Cir. 2020) ("[W]hen a federal court is confronted with an unresolved question of state law, our job is to ascertain the rule the state court would most likely

follow under the circumstances[,] . . . not to extend state law beyond its well-marked boundaries in an area." (quotations and citations omitted)).  But, while the District Court concluded that Goldberg could be distinguished based on the insured's conduct in this case, we cannot agree.

**1.**

Goldberg is clear in setting forth the "only" circumstances under which a liability "insurer defend[ing] under a reservation of rights to later disclaim coverage . . . may later seek reimbursement for an amount paid to settle the underlying tort action" under Massachusetts law.  680 N.E.2d at 1129 (emphasis added).  Those specified circumstances are that: (1) the insured had "agreed that the insurer may commit the [insurer's] own funds to a reasonable settlement with the right later to seek reimbursement from the insured"; (2) the insurer had "secure[d] specific authority to reach a particular settlement which" the insured had agreed to pay; or (3) the insurer had notified the insured "of a reasonable settlement offer" and given the insured "an opportunity to accept the offer or assume its own defense[.]" Id.

The District Court did not determine that there was a basis for finding that any of the three expressly enumerated circumstances that Goldberg identified were present here.  Nor do we see how the District Court could have done so.  Nothing in the

pleadings indicates that the insureds had "agreed that the insurer may commit the [insurer's] own funds to a reasonable settlement with the right later to seek reimbursement from the insured"; given "specific authority" to the insurer "to reach a particular settlement which" they had agreed to pay; or been notified by the insurer "of a reasonable settlement offer" and given by the insurer "an opportunity to accept the offer or assume its own defense." Id. In fact, Berkley at no point disputes the insureds' contention that they had never agreed to Berkley seeking reimbursement for paying the settlement or to their paying it themselves.[4] In addition, Berkley conceded at oral argument that it did not, upon reaching a settlement with Papsis, give the insureds the option of accepting the settlement or proceeding with their own defense.[5]

---

[4] Using a "compare" citation, Goldberg cites to a case in which a district court, applying Pennsylvania law, assumed without deciding that a reservation of the right to seek restitution of a settlement agreement was effective where the insured agreed to the insurer paying a specific settlement amount and "agreed that the tender of the [settlement] check by the insurer did not constitute an admission of coverage under the insurance policy." See Goldberg, 680 N.E.2d at 1130 n.35 (citing Great Am. Ins. Co. v. Raque, 448 F. Supp. 1355, 1358 (E.D. Pa. 1978), aff'd, 591 F.2d 1335 (3d Cir. 1979)). But insofar as the SJC in citing that case intended to suggest that the circumstances there sufficed to permit the claim for reimbursement to proceed, nothing in the pleadings here supportably shows this case involves such circumstances. And insofar as the SJC intended to suggest that those circumstances were not enough to permit such a claim to proceed, that suggestion obviously provides no support to Berkley here.

[5] In that regard, the pleadings and attached exhibits show the following. A week before the settlement conference with Papsis, the insureds insisted in a letter to Berkley that "[a]t

- 19 -

Thus, we see no basis on which we could affirm the District Court's attempt to distinguish Goldberg on its facts.[6]

**2.**

Berkley does argue that we may affirm the District Court's ruling on either of two alternative grounds: (1) that even if the District Court's specific grounds for distinguishing Goldberg on its facts are unavailing, Goldberg may be distinguished on a different fact-based ground; and (2) that even if Goldberg may not be distinguished on such a basis, the SJC's subsequent decision in Metro. Life Ins. Co. v. Cotter, 984 N.E.2d 835 (Mass. 2013), shows that Goldberg is no longer controlling in cases like this one, see United States v. George, 886 F.3d 31, 39 (1st Cir.

---

the upcoming mediation, [Berkley] must make reasonable settlement offers to Mr. Papsis . . . without any contribution from the Defendants." Counsel for Berkley then responded by letter the next day, "confirm[ing]" that the insureds were "demanding that [Berkley] pay to settle the Papsis claims but [were] refusing to contribute any sums towards such a settlement." The insureds at no point responded to this letter, however. Nor is there any indication that Berkley, upon reaching a settlement with Papsis, "g[a]ve the insured[s] an opportunity to accept the offer or assume [their] own defense." Goldberg, 680 N.E.2d at 1129.

[6] There is no indication that the insurer in Goldberg disputed its duty to provide the insured with a defense in that suit, while the insurer here does separately seek a declaratory judgment that it had no duty to defend the insureds against the Papsis suit. But nothing in the District Court's rationale for denying Atlantic's and Granite's motion for judgment on the pleadings as to the settlement-payments-based part of Berkley's restitution claim purports to distinguish Goldberg on the ground that the insurer here, unlike the insurer there, either had no duty to defend at all or disputed whether it did.

2018) (noting that we may affirm on grounds not reached by the district court). We are not persuaded by either contention.

With respect to the first alternative ground, Berkley appears to be arguing that, even accepting that the insureds' conduct was not coercive in the way that the District Court appeared to deem it to be, Goldberg is still no bar. In pressing this contention, Berkley stresses that the record suffices to show that, at the least, the insureds actively monitored the defense of Papsis's claims, encouraged Berkley to settle when it did, and attended the successful settlement conference. The notion thus appears to be that these features of this case show that -- at least given the third circumstance that Goldberg recognizes as one in which a claim for reimbursement of settlement costs may proceed -- Goldberg does not stand in the way of Berkley's settlement-payment-based restitution claim.

It remains the case, however, that Goldberg states that a liability insurer defending insureds "under a reservation of rights to later disclaim coverage" "only" may pursue restitution for a settlement it paid to a third party to settle a tort claim brought against its insured in one of three expressly enumerated circumstances. See Goldberg, 680 N.E.2d at 1129 (emphasis added). And, as we have explained, there is no basis in the pleadings for finding that any of them are present here. Thus, while Berkley is

- 21 -

right that the pleadings show that the insureds here were far more involved in discussions about the settlement than the insured in Goldberg was in the settlement process there, we do not see how this attempt by Berkley to distinguish Goldberg on its facts fares any better than the District Court's. See Rared Manchester NH, LLC v. Rite Aid of N.H., Inc., 693 F.3d 48, 54 (1st Cir. 2012) ("Where, as here, a party asserting a state-law claim eschews an available state forum in favor of a federal forum, it scarcely can be heard to complain when the federal court follows existing state precedent and refrains from blazing a new and more adventurous jurisprudential trail.").

Berkley does try to counter this conclusion by invoking the California Supreme Court's decision in Blue Ridge Ins. Co. v. Jacobsen, 22 P.3d 313 (Cal. 2001). Berkley argues that Blue Ridge shows that the SJC would permit Berkley to seek reimbursement here, notwithstanding what the SJC said in Goldberg and Berkley's failure to meet the preconditions to seeking reimbursement that Goldberg laid out. That is so, Berkley contends, because of what the record shows about the nature of the insureds' involvement in the settlement process.

Berkley is right that, in Blue Ridge, the California Supreme Court permitted the insurer to seek reimbursement from its insureds based on a unilateral reservation of rights despite the insurer not having secured the insured's agreement to the

reservation of rights or agreement to pay for the settlement. Id. at 320. There, however, the insurer had informed its insureds that it considered a settlement offer reasonable and had given the insureds the choice between accepting it or continuing to litigate on their own. See id. at 315. Here, by contrast, as we have explained, the pleadings show -- and Berkley concedes -- that the insureds were not presented with a settlement offer by the insurer in a similar manner and given the option at that time by the insurer of either accepting the offer or assuming their own defense. So, the pleadings make clear, Berkley did not do even what the insurer in Blue Ridge did.

**b.**

With respect to the second ground, Berkley contends that Cotter shows that Goldberg is no longer good law, at least in a case in which the insured was involved in the settlement negotiations and encouraged the insurer to settle. But, "[a]bsent conspicuous evidence that a state's highest court has abandoned a previously-announced rule, it is not for the federal courts to presume as much," Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 17 (1st Cir. 1999), and we see no "conspicuous evidence" in Cotter that the SJC abandoned Goldberg in that case in the relevant respect.

Cotter held that a disability insurer could bring a restitution claim against its insured for disability payments that

the insurer made under a unilateral reservation of rights to seek recoupment.  See 984 N.E.2d at 848-52.  In doing so, the SJC relied on the Third Restatement of Restitution and Unjust Enrichment, which Cotter read to provide that, as a general matter:

> [W]here one party to a contract demands performance from the other that is not due under the terms of the contract, the other party may "render such performance under protest or with reservation of rights, preserving a claim in restitution to recover the value of the benefit conferred in excess of the recipient's contractual entitlement."

Id. at 849 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 35(1) (Am. L. Inst. 2011)).

We see nothing in Cotter that purports to overturn Goldberg's holding as to the liability insurance context.  In fact, Cotter noted that its holding was consistent with Goldberg because of the differences between the liability insurance context and "the disability insurance context, where an insured who is the recipient of disability benefits ordinarily cannot claim to be removed from the payment process."  Id. at 850.

In drawing this distinction, the SJC did note that "[m]uch of [its] concern in Goldberg . . . centered on the insured's lack of involvement with or consent to the settlement."  Id.  And, for that reason, Berkley asks us to read Cotter as cutting back on Goldberg in a case, like this one, in which the

- 24 -

insureds were "involved with" a settlement even if they did not "consent to" it.

But, when read in context, that statement in Cotter does not indicate to us that Cotter meant to be cutting back on Goldberg's plain holding in the liability insurance context. Cotter emphasized that in "the liability insurance context" there is a "duty to defend [that] is independent from, and broader than, [the] duty to indemnify," id. (quoting Metro. Prop. & Cas. Ins. Co. v. Morrison, 951 N.E.2d 662, 667 (Mass. 2011)), while in the disability insurance context there is no such duty. And, we note that, under Massachusetts law, the duty to defend includes the obligation "to make reasonable, prudent efforts to settle," Boyle v. Zurich Am. Ins. Co., 36 N.E.3d 1229, 1239 (Mass. 2015), and "[o]rdinarily, a claim of unjust enrichment will not lie 'where there is a valid contract that defines the obligations of the parties,'" Cotter, 984 N.E.2d at 849 (quoting Bos. Med. Ctr. Corp. v. Sec'y of the Exec. Off. of Health & Hum. Servs., 974 N.E.2d 1114, 1132 (Mass. 2012)). Thus, because of Cotter's emphasis on the distinction between the respective insurance contexts involved in that case and Goldberg, and the ways in which the legal framework governing those two contexts differs from one another under Massachusetts law, we conclude that we lack the sort of "conspicuous evidence" of an intent on the part of the SJC to overturn one of its prior decisions that would permit us to

conclude that Cotter had overruled Goldberg's relevant holding. See Quint, 172 F.3d at 17.

Berkley does also point out that the commentary to the section of the Restatement that Cotter cites provides that if a liability insurer, "having given adequate notice that it is proceeding under reservation of rights . . . eventually prevails in the underlying coverage dispute, it may recover that part of its outlay that exceeds its policy obligation by a claim in restitution." Restatement (Third) of Restitution and Unjust Enrichment § 35 cmt. c. But Cotter does not itself rest its holding on the portion of the commentary to the Third Restatement that Berkley highlights. So, we do not see how Cotter's reliance on the Third Restatement suffices to permit us to conclude that Goldberg has been superseded in the relevant way.

We do note, as we have mentioned above, that Berkley separately is seeking a declaratory judgment that it had no duty to defend the insureds here. Berkley develops no argument, however, that even if Cotter has not generally undermined Goldberg in a case in which a liability insurer defends its insureds under a reservation of the right to later disclaim coverage, Cotter has cut back on Goldberg in a case where such a liability insurer can later show that it had no duty to defend at all or has reserved its right to seek a declaratory judgment that it had no such duty. Nor did the District Court rely on any such ground in denying the

insureds' motion for judgment on the pleadings as to this portion of Berkley's claim for restitution. We thus do not see how we may conclude that Goldberg is not binding here because the insurer there did not appear to have disputed its duty to defend.

**3.**

For all these reasons, we conclude that Goldberg requires the reversal of the District Court's ruling on the insureds' motion for judgment on the pleadings regarding the part of Berkley's restitution claim that seeks reimbursement of the settlement payment. We thus must also vacate the District Court's grant of Berkley's summary-judgment motion on that same claim. See Waterfront Comm'n of N.Y. Harbor v. Governor of New Jersey, 961 F.3d 234, 242 (3d Cir. 2020) (reversing an order denying the motion to dismiss and therefore vacating the subsequent order granting summary judgment on the claim that should have been dismissed).

**IV.**

We now turn to the insureds' challenges to the District Court's rulings regarding the part of Berkley's claim for restitution that seeks reimbursement for the costs of defending Atlantic and Granite against Papsis's suit. The insureds take aim, once again, at both the District Court's denial of their motion for judgment on the pleadings as to this part of the restitution claim and the District Court's grant of summary

judgment to Berkley as to this part of the claim.  In doing so, moreover, the insureds appear to be pressing the contention that the District Court erred in both those rulings in part because there is simply no basis in the record for finding that Berkley made a reservation of rights to seek reimbursement for those costs and thus no basis for permitting the restitution claim with respect to these costs to go forward under Massachusetts law.

As we will next explain, we conclude, reviewing de novo, see Shay, 702 F.3d at 79, that there is merit to this contention. Accordingly, we conclude on this basis that the District Court's denial of the insured's motion for judgment on the pleadings as to this part of Berkley's claim for restitution must be reversed. And, given that ruling, we conclude that the ruling granting summary judgment to Berkley on this part of its restitution claim must be vacated as well.[7]

**A.**

To support the District Court's ruling denying the insured's motion for judgment on the pleadings as to the defense-

---

[7] The insureds did not press the contention they make on appeal regarding the absence of such a reservation of the right to seek reimbursement of defense costs in their motion for judgment on the pleadings, although they did press that contention in their opposition to Berkley's motion for summary judgment on that same claim.  The "failure to raise th[is] issue . . . below . . . would ordinarily trigger plain error review," Hoolahan v. IBC Advanced Alloys Corp., 947 F.3d 101, 115-16 (1st Cir. 2020), but the error is clear from the pleadings and Berkley has neither asserted the

- 28 -

cost-based restitution claim, Berkley contends that, under Massachusetts law, "[w]hen an insurer conditions payment of defense costs on the condition of reimbursement if the insurer had no duty to defend, the condition becomes part of an implied in fact contract when the insured accepts payment." Berkley goes on to contend that the record suffices to show that it "never had a duty to defend and it conferred a benefit upon its insured[s] to which [they] had no contractual entitlement."

In ruling against the insureds' motion for judgment on the pleadings, the District Court essentially agreed with Berkley's position, as the District Court stated in a footnote that the insureds:

> contend that Berkley's unilateral reservation of rights additionally precludes Berkley from seeking reimbursement for costs incurred in defending them in the Papsis lawsuit, although [the insureds] concede that the SJC has yet to settle this issue. Because [the insureds'] argument largely hinges on an extension of their self-serving reading of Goldberg, the court concludes that Berkley is not prohibited at this stage from seeking reimbursement for the cost of defending defendants in the Papsis suit as well.

insureds' waiver as a basis for rejecting this argument nor suggested that this aspect of the District Court's decision should be reviewed for plain error, see United States v. Tapia-Escalera, 356 F.3d 181, 183, 185-88 (1st Cir. 2004) (reviewing de novo and reversing where the appellant did not raise the issues below and the appellee did not argue for the application of plain error).

<u>Berkley I</u>, 594 F. Supp. 3d at 237 n.2.

It is not entirely clear which "unilateral reservation" by Berkley the District Court had in mind in attributing to the insureds' the contention that Berkley could not pursue the defense-costs-based restitution claim on the strength of such a "reservation." <u>Id.</u> The uncertainty on this score arises because, as we have explained, the record shows that Berkley not only made a "full" reservation of the right to disclaim coverage as to each Policy exclusion it invoked but also stated that it reserved the right to seek a declaratory judgment that it had no duty to defend the insureds against Papsis's claims. So, it is possible, based on the text of the District Court's opinion alone, that the District Court had either or both reservations in mind.

In granting Berkley's motion for summary judgment, however, the District Court did elaborate on the basis for its ruling denying the motion for judgment on the pleadings. And, in doing so, the District Court gave further insight into the reservation to which it was referring.

The District Court stated in that ruling that, as it had "discussed in greater detail in its memorandum and order denying [the insureds'] motion for judgment on the pleadings, the parties should reasonably have expected that Berkley would seek reimbursement from defendants <u>pursuant to its explicit reservation of rights</u>." <u>Berkley II</u>, 617 F. Supp. 3d at 83 (emphasis added)

- 30 -

(internal citation omitted). Moreover, in the same summary-judgment ruling, the District Court necessarily rejected the insureds' contention that, because Berkley had not made a reservation of the right to reimbursement of defense costs, Berkley's restitution claim for the defense costs could not go forward. And the District Court did so in part on the ground that the SJC "has not yet squarely addressed 'whether an insurer may seek reimbursement for the costs of a defense undertaken pursuant to a unilateral reservation of rights.'" Id. at 83 n.3 (quoting Cotter, 984 N.E.2d at 849 n.21).

That last statement by the District Court is notable for present purposes because the footnote in Cotter to which the District Court cited acknowledged that "other jurisdictions are split as to the validity of such claims[,]" while citing as an example of a case that had permitted such a restitution claim to go forward one in which the insurer had expressly reserved the right to seek recoupment of those costs. Cotter, 984 N.E.2d at 849 n.21 (citing Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am., 448 F.3d 252, 255 (4th Cir. 2006) (noting that the insurer expressly reserved the right "to seek reimbursement for defense costs expended on non-covered claims")). The District Court thus appears to have premised its denial of the motion for judgment on the pleadings as to Berkley's defense-costs-based claim for restitution on two interdependent determinations. The first was

- 31 -

that, contrary to the insureds' position, the SJC had left open whether, notwithstanding Goldberg, a claim for restitution of defense costs could go forward in a circumstance in which there was a unilateral reservation of rights of the type referred to in the case referenced by Cotter. The second was that the record sufficed in this case to show that the insurer here had made a reservation of an equivalent kind.

The insureds now contend to us on appeal, however, that the record provides no support for the District Court's latter determination, even assuming its first determination is correct. And, they contend, for that reason the District Court's ruling must be reversed. We agree.

Although the pleadings show that Berkley made a "full" reservation of the right to disclaim coverage, that reservation plainly is not itself a reservation of the right to seek reimbursement of defense costs. See Goldberg, 680 N.E.2d at 1129 n.31 (emphasizing that "[t]here is a difference between an insurer's reservation of its right to disclaim coverage" -- which "is the notification to the insured that the insurer will defend the insured, but that the insurer is not waiving any defenses it may have under the policy" -- and a reservation of rights or "an agreement by the insured that he will reimburse the insurer" for a settlement or defense costs); see also Emps.' Liab. Assurance Corp. v. Vella, 321 N.E.2d 910, 914 (Mass. 1975) ("Where an insurer

gives the insured notice of disclaimer of liability as soon as possible after it learns of the ground therefor, it may continue to defend the action against the insured, at least if the insured acquiesces. . . . But if the insurer knows of its right to disclaim and exercises dominion over the case at an important point without disclaiming liability or reserving rights, subsequent disclaimer is barred."); Salonen v. Paanenen, 71 N.E.2d 227 (Mass. 1947) (establishing this rule); Lexington Ins. Co. v. CareCore Nat'l, LLC, 2014 WL 7477718, at *2, *5 (Mass. Super. July 18, 2014) (distinguishing a reservation of the right to disclaim coverage from a reservation of the right to seek restitution of defense costs). In addition, while the pleadings show that Berkley also expressly reserved the right to seek a declaratory judgment disclaiming its duty to defend, that reservation, by its plain terms, similarly is not a reservation of the right to seek the reimbursement of those costs. Indeed, in the letter to Granite in which Berkley set forth that reservation, Berkley expressly stated that "[p]ending the receipt of such a" declaratory judgment, the insurer would "provide a full defense to the Papsis case and . . . pay all reasonable costs and fees associated with [that] defense."

We also see no basis for upholding the District Court's ruling -- insofar as Berkley means to be asking us to do so -- on the ground that Massachusetts law would permit a liability insurer's claim for restitution of defense costs to go forward

even absent the insurer having made an express reservation of the right to seek reimbursement of those costs. A leading out-of-state case allowing recovery of defense costs explicitly predicates recovery on such an express reservation having been made, see Buss v. Superior Ct., 939 P.2d 766, 784 n.27 (Cal. 1997), and a relevant Massachusetts state court decision notes that "[a]lthough some jurisdictions outside of Massachusetts have concluded that an insurer may recoup [defense] costs, they have so held only where the insurer . . . made it clear to the insured, either in the policy itself or in its reservation of rights, that it retains the right to seek reimbursement of those costs if a court later determines there was no duty to defend." Lexington Ins. Co., 2014 WL 7477718, at *5; see also Matagorda Cnty. v. Tex. Ass'n of Cntys. Cnty. Gov't Risk Mgmt. Pool, 975 S.W.2d 782, 784 (Tex. App. 1998) ("Reimbursement of defense costs is not allowed when the reservation of rights letter is silent about reimbursement and the record does not reflect an agreement or understanding that the insured would reimburse if later it was determined there was no duty to defend."), aff'd, 52 S.W.3d 128 (Tex. 2000).

Notably, the District Court did not itself identify any authority that would support the conclusion that the restitution claim at issue could go forward if there were no express reservation of the kind made in Perdue Farms, Inc. And Berkley, for its part, similarly has identified no authority, from

Massachusetts or elsewhere, that endorses the notion that a restitution claim for defense costs may proceed based on the kinds of reservations that Berkley made here.

Nor is Berkley's failure to have done so attributable to its having lacked the opportunity to argue that such a restitution claim can succeed even in the absence of such a reservation. The insureds opposed summary judgment below on the ground that Berkley had not reserved the right to seek reimbursement of the defense costs, and on appeal the insureds make that same argument in seeking not only to overturn the grant of summary judgment to Berkley as to this claim but also the denial of the motion for judgment on the pleadings as to it. Yet, in attempting to fend off the insureds' challenge to the summary-judgment ruling below, Berkley developed no argument that a reservation of rights to seek reimbursement of defense costs had been made or that a reservation of that specific kind need not have been made under Massachusetts law because Berkley had made other reservations that were the functional equivalent. Berkley similarly has developed no such argument in responding to that very same contention on appeal in the insureds' challenges to the District Court's grant of summary judgment and denial of the motion for judgment on the pleadings.

Insofar as Berkley may be understood to be attempting to premise such an argument on the Third Restatement of Unjust Enrichment, we see no basis for crediting the contention. In

addition to the fact that Goldberg rejects the Third Restatement's position as to claims for reimbursement of settlement payments by liability insurers, the Third Restatement's sole discussion of the circumstances in which claims for reimbursement for defense costs by liability insurers may proceed consists of an example in which the claim is brought by an insurer that expressly "reserve[s] the right to seek reimbursement of defense costs that are held to be outside its contractual obligation." Restatement (Third) of Restitution and Unjust Enrichment § 35 cmt. c, illus. 12.

Thus, given the absence of any support in the record for finding that Berkley reserved the right to seek reimbursement for defense costs and the absence of any basis for concluding that such a failure is of no consequence under Massachusetts law, we see no basis for the denial of the insureds' motion for judgment on the pleadings as to this claim. Accordingly, we reverse the District Court's ruling denying Atlantic's and Granite's motion for judgment on the pleading as to Berkley's defense-costs-based claim for restitution. And, having done so, we thus must also vacate the District Court's grant of summary judgment to Berkley as to this part of its claim for restitution. See Waterfront Comm'n of N.Y. Harbor, 961 F.3d at 242.

**V.**

There remains to address, then, only Atlantic's and Granite's challenges on appeal to the District Court's grant of

summary judgment to Berkley on its claim for a declaratory judgment that Papsis's suit is not covered under the Policy due to the Policy's "fungi or bacteria" exclusion. But, given that the Papsis suit has settled, and that we have held that the insureds are entitled to judgment on the pleadings as to Berkley's claim for restitution for both the settlement payment and the defense costs, those portions of the appeal are moot. See ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 53-54 (1st Cir. 2013) ("For declaratory relief to withstand a mootness challenge, the facts alleged must show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (cleaned up)).

## VI.

For the reasons set forth above, we **reverse** the judgment of the District Court in part, **vacate** its judgment in part, and **dismiss** the remainder of the appeal as moot. Costs are awarded to appellants.